Argued and submitted September 9, 1985, affirmed in part, reversed in part on appeal; affirmed on cross appeal; and remanded May 14, reconsideration denied July 11, petition for review denied September 30, 1986 (302 Or 35)

BANKS et al,
*Respondents - Cross-Appellants,*

*v.*

HENDERSHOTT et al,
*Appellants - Cross-Respondents.*

(16-80-01043; CA A32469)

719 P2d 484

John B. Arnold, Eugene, argued the cause for appellants - cross-respondents. With him on the briefs were Leslie M. Swanson, Jr., Kay Kiner James, Sharon A. Rudnick and Harrang, Swanson, Long & Watkinson, P.C., Eugene.

Lawrence O. Gildea, Eugene, argued the cause and filed the briefs for respondents - cross-appellants.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

This legal malpractice case arises out of defendants' representation of plaintiffs in an action for strict foreclosure and waste, which in turn arose out of plaintiffs' 1973 purchase from the Petersens of a going business, Berry Creek Construction Company, including its assets, consisting of real and personal property. In 1976, plaintiffs sold the business to Workman Contractors, Inc. (Workman), whose subsequent default precipitated plaintiffs' default on their contract with the Petersens, who then brought a strict foreclosure and waste action against both Workman and plaintiffs. Workman cross-claimed, alleging fraud, conversion and breach of contract; plaintiffs cross-claimed for waste and for foreclosure of the Workman contract. An interlocutory decree in favor of the Petersens foreclosing plaintiffs' interest was entered on November 15, 1977. Plaintiffs failed to redeem, and a final decree of foreclosure was entered February 3, 1978. On January 25, 1978, a jury verdict in the amount of $256,855.09 was returned against plaintiffs on Workman's cross-claim for fraud, and on March 8, 1978, plaintiffs, on defendants' advice, filed a voluntary petition in bankruptcy.

In this action, plaintiffs allege that defendants' negligence caused their failure to redeem the Berry Creek property or to reinstate the contract, as a result of which they lost their interest in the property. They further allege that their injury was aggravated by defendants' advice to file for bankruptcy. Defendants counterclaimed for unpaid attorney fees. From a jury verdict awarding plaintiffs $552,500 on the "foreclosure" claim and $28,899.10 on the "bankruptcy" claim, and awarding defendants $29,725.84 on their counterclaim, defendants appeal and plaintiffs cross-appeal. We affirm in part and reverse in part on the appeal and affirm on the cross-appeal.

In order to understand the issues presented, the facts underlying plaintiffs' allegations of negligence are necessary. The interlocutory decree of foreclosure, entered November 15, 1977, provided that December 18, 1977, was the final date on which plaintiffs could redeem the property. The amount required to redeem was approximately $450,000. On December 7, 1977, however, plaintiffs and the Petersens entered into an oral agreement, later reduced to writing and effective as of December 7, by which the Petersens agreed to

extend the redemption period to January 18, 1978, and which also provided that (1) plaintiffs would confess judgment on the waste claim for $84,315.80; (2) plaintiffs could reinstate the contract by paying the Petersens approximately $125,000 by January 18, 1978; (3) plaintiffs would not petition the court, either directly or indirectly, for a further extension of the redemption date or otherwise attempt to redeem the property after January 18, 1978, and (4) plaintiffs and the Petersens would move jointly to amend the interlocutory decree accordingly. Plaintiffs do not contend that defendants were negligent in negotiating that agreement or in advising them to accept it, and neither party contends that it was unenforceable.

On December 16, 1977, pursuant to the agreement, plaintiffs and the Petersens joined in a motion to extend the redemption period from December 18, 1977, to January 18, 1978. On December 20, 1977, the judge, who was then presiding over the waste and fraud portion of the trial, agreed to an extension but postponed specifying a final redemption date until the end of the pending trial, stating that he would then extend it for a reasonable time. On January 25, 1977, however, after the jury had returned its fraud verdict against plaintiffs, the judge announced that the settlement agreement was binding and that the redemption period had expired January 18, 1977, seven days earlier.

■ In this malpractice case, plaintiffs' claim regarding defendants' negligence in the foreclosure action includes three specifications of negligence that were submitted to the jury. The first alleges that defendants were negligent in failing to seek a clarification from the trial judge concerning the final redemption date following his response to the parties' joint motion. The second and third charge defendants with failing to advise plaintiffs to redeem the property or to reinstate the contract in accordance with the terms of the interlocutory decree or the settlement agreement, and of the consequences of not doing so. The jury, by a special verdict, rejected the second and third specifications but found defendants negligent under the first.

On appeal, defendants assign as error the trial court's denial of their motion made at the close of the evidence for a directed verdict on the first specification of negligence. They

contend that, given the settlement agreement, their decision not to seek a judicial clarification regarding the final redemption date was an exercise of professional judgment, for which an attorney may not be held liable. As we view this case, as a matter of law, plaintiffs were bound by the terms of the settlement agreement of December 7, 1977, under which the parties agreed that the final redemption date was to be January 18, 1978, and plaintiffs agreed that they would not attempt to redeem after that date or to have the court fix a later date. Plaintiffs and defendants agree that that agreement was valid and enforceable. Accordingly, even if defendants had obtained a "clarification" from the judge that fixed a later redemption date, plaintiffs were contractually empowered to redeem the property or reinstate the contract only until January 18, and no later, and were precluded from doing so thereafter. Furthermore, because any direct or indirect attempt to extend the redemption period beyond that date would have constituted a breach of the settlement agreement, any effort by defendants to have the court fix a date later than that to which the parties had agreed would have risked plaintiffs' right under the agreement to reinstate the contract for substantially less money than was required to redeem.

The settlement agreement is clear, and plaintiffs do not contend that defendants were negligent in negotiating it or in advising plaintiffs to agree to it. Accordingly, defendants were not, as a matter of law, negligent, and their motion for a directed verdict on the first specification of negligence should have been granted.

■ The gravamen of plaintiffs' "bankruptcy" claim is that defendants' advice to file for bankruptcy caused them to incur administrative expenses totalling $28,899.10. The petition in bankruptcy was dismissed subsequently on their motion. Plaintiffs alleged that defendants were negligent in advising them to take bankruptcy without first thoroughly investigating the value of their assets and liabilities, considering all available alternatives to bankruptcy and advising them of those alternatives. Defendants concede that plaintiffs incurred the claimed expenses but contend that the trial court erred in denying their motion for a directed verdict, because plaintiffs failed to present sufficient evidence concerning the cost of the alternatives to bankruptcy.

There was evidence from which a jury could find that defendants were negligent in recommending bankruptcy and that plaintiffs incurred administrative expenses of $28,899.10 as a direct result of that negligence. Evidence was also presented concerning the potential costs associated with available alternatives to bankruptcy, in particular, the "cost" of negotiating further with plaintiffs' judgment creditors. That evidence, although meager, was sufficient to present a question of fact regarding the extent of the injury caused by defendants' alleged negligence. Among other things, the jury could have found that one alternative was to do nothing. Therefore, the trial court did not err in denying defendants' motion.

■    On cross-appeal, plaintiffs assert that the trial court misconstrued the jury's verdict on defendants' counterclaim to recover unpaid attorney fees. Because we agree with the trial court's construction of the verdict, we affirm.

The jury answered special interrogatories as follows:

"4.    *Defendants' First Counterclaim.*

"A.    Do you find that the defendants are entitled to recover an amount from the plaintiffs for services they performed between January, 1977 through January 30, 1979?

"Yes X__

"No __

"* * * * *

"B.    What do you find to be the reasonable value of the defendants' services performed between January, 1977 and January 30, 1979?

$20,451.20"

On that special verdict, the following judgment was entered on February 13, 1984:

"3.    The jury, having found the value of defendants' services between January, 1977 and January 30, 1979 to be $20,451.27; and defendants' evidence (Exhibit "P") showing that plaintiffs in 1977 and 1978 paid to defendants on account amounts which exceed $20,451.27, defendants' First Counterclaim is dismissed and plaintiffs shall have judgment against defendants thereon."

On February 14, 1984, however, on defendants' motion, the court vacated its judgment and entered an amended judgment:

> "3. Defendants shall have judgment against Plaintiffs, and each of them, on Defendants' First Counterclaim in the amount of $20,451.27 plus $9,273.67 pre-judgment interest from January 30, 1979 at nine percent (9%) per annum."

The obvious confusion results from the wording of the interrogatories, which fail to acknowledge that plaintiffs had previously paid more than $21,000 in attorney fees to defendants for services performed within the specified time period. Nevertheless, it is clear from the record that the amount previously paid was not in dispute or considered to be a potential setoff to the additional $46,073.34 sought by defendants at trial. The amended judgment is, therefore, consistent with the jury's verdict in view of the record.

Finally, with respect to the denial of an award for plaintiffs' attorney fees, we find no error.

Affirmed in part and reversed in part on appeal; affirmed on cross-appeal; and remanded for entry of a new judgment not inconsistent with this opinion.